IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TC COMPANY,

      Plaintiff,

vs.                                                                    No. 1:23-cv-0514 DLM/JMR

UNITED STATES FOREST SERVICE,

      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES FOREST SERVICE'S MOTION FOR SUMMARY JUDGMENT (DOC. 49) AND DENYING TC COMPANY'S MOTION FOR SUMMARY JUDGEMENT (DOC. 50)**[1]

      In January and February of 2022, the United States Forest Service (USFS) conducted planned burning of debris left over from projects that involved the thinning or cutting of forest trees. The USFS refers to the planned burnings during this period as the Pino West Prescribed Pile Burn. These piles of burning debris were later covered by snow. On April 22, 2022, high winds blew off the snow, and the still-smoldering burn piles under the snow ignited, resulting in a wildfire that the USFS labeled the Cerro Pelado Fire. These events are the subject of this lawsuit.

      Plaintiff TC Company (TC) made requests for information on the Cerro Pelado Fire from the USFS under the Freedom of Information Act (FOIA). In its response to Plaintiff's requests, TC contends the USFS improperly withheld agency records, while the USFS argues it conducted a reasonable search and produced all responsive documents. The parties have filed opposing motions for summary judgment, with the USFS's motion for summary judgment consisting of fourteen undisputed material facts (UMF) supported by three exhibits. (*See* Docs. 49, 49-1 to -3.) TC's

---

[1] Under 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties have consented to me serving as the presiding judge and entering final judgment. (Doc. 6.)

motion for summary judgment consists of seventy UMFs supported by 38 exhibits.[2] (*See* Docs. 50, 50-1 to -38.) Having reviewed the parties' submissions and the relevant law, the Court will **GRANT** the USFS's motion for summary judgment and **DENY** TC's summary judgment motion.

I. **Legal Standard**

In FOIA litigation, as in all civil cases, summary judgment is granted when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines "which facts are material[, and o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden to show that there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Upon a proper FOIA request, federal agencies must disclose records to a member of the public. *See* 5 U.S.C. § 552. And an agency has a duty to construe FOIA requests liberally. *See Beagles v. U.S. Dep't of Labor Wage & Hour Div.*, No. CV 16-506 KG/CG, 2019 WL 1085170, at *5 (D.N.M. Mar. 7, 2019) (citations omitted); *see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) ("FOIA is to be broadly construed in favor of disclosure.") (citation omitted). An agency also has an obligation to conduct a search "reasonably calculated to uncover all relevant documents." *US Right to Know v. Nat'l Nuclear Sec. Admin.*, 721 F. Supp. 3d 1198, 1205 (D.N.M. 2024) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

---

[2] D.N.M.LR-Civ. 10.5 limits the number of pages for motion exhibits to fifty. In an apparent effort to comply with the Rule, TC formatted multiple pages of letters and documents to appear as one page in its exhibits. (*See* Docs. 50-4, 50-10, 50-11, 50-20, 50-23, 50-31, 50-32, 50-34, and 50-38.) While D.N.M.LR-Civ. 10.5 provides that multiple pages of a deposition transcript may be condensed to one page, the Rule does not contemplate that a party can simply reformat multiple entire pages of documents to show as one page. Thus, TC's exhibits run afoul of 10.5. Additionally, many of TC's exhibits are not marked in a way that would bring specific portions of the exhibit to the Court's attention as required by D.N.M.LR-Civ. 10.6. Nevertheless, the Court has reviewed all of TC's exhibits but reminds counsel that in the future they should comply with the Local Rules.

1983)). In determining whether a document search was reasonable, "the issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Trentadue v. Integrity Comm.*, 572 F.3d 794, 797 (10th Cir. 2009) (quoting *Weisberg*, 705 F.2d at 1351 (emphasis in original)). Put another way, "the focal point of the judicial inquiry is the agency's search process, not the outcome of its search." *Id.*

FOIA determinations are usually resolved at the summary judgment stage, *Beagles*, 2019 WL 1085170, at *4, with courts reviewing an agency's decision de novo. 5 U.S.C. § 552(a)(4)(B); *see also Hamilton v. United States*, No. CIV 14-0040 KBM/GBW, 2015 WL 12696083, at *2 (D.N.M. Mar. 5, 2015) (noting that de novo review requires "all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester."). Courts do, however, "accord substantial weight to an affidavit [or declaration] of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility." 5 U.S.C. § 552(a)(4)(B). A court may award summary judgment based on information provided by an agency in a declaration, so long as the declaration is "sufficiently detailed and non-conclusory and demonstrate[s] that the search method was reasonably conducted to uncover all relevant documents." *Hamilton*, 2015 WL 12696083, at *3 (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). An agency's declarations are also given "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* (citing *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 63 (D.D.C. 2002)) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

II. Undisputed Material Facts

TC does not dispute any of the USFS's undisputed material facts, (Doc. 55 at 6), and puts forth thirteen UMFs, which are the same or substantially similar to the USFS's undisputed material

facts. (Doc. 50 UMFs ¶¶ 1–6, 9–10, 15, 21, 24, 27, 43.) Thus, the Court accepts all fourteen of the USFS's undisputed material facts and all thirteen of TC's corresponding undisputed material facts. (Docs. 49 UMFs ¶¶ 1–14; 50 UMFs ¶¶ 1–6, 9–10, 15, 21, 24, 27, 43.) Additionally, the Court accepts TC's UMFs ¶¶ 7–8 as undisputed as the USFS does not address those facts in its briefs. (*See* Docs. 49, 56, 59.) As to TC's other purported undisputed material facts, (*see* Doc. 50 UMFs ¶¶ 11–14, 16–20, 22–23, 25–26, 29–42, 44–70), the Court finds they do not pertain to the FOIA requests at issue in this action (TC's first and second FOIA requests), and thus are immaterial. Lastly, the Court references certain other facts drawn from the USFS's declarations in its analysis below regarding the sufficiency of the USFS's declarations and the adequacy of its search for responsive documents. (*See* Docs. 49-1 to -3.)

In January and February of 2022, the USFS, an agency within the United States Department of Agriculture (USDA), conducted prescribed pile burns, "a type of [planned] fire where firefighters pile and burn forest debris to reduce an area's wildfire risk." *Pile Burning*, USDA FOREST SERVICE, https://www.fs.usda.gov/detail/arp/landmanagement/resourcemanagement/?cid=fsm91_058291 (last visited Dec. 12, 2024). The USFS refers to the pile burns during this period as the Pino West Prescribed Pile Burn, where burning piles were covered by snow that was later blown off during days of high winds. *USDA Forest Service confirms cause of the 2022 Cerro Pelado Fire on the Santa Fe National Forest*, USDA FOREST SERVICE (July 24, 2023), https://www.fs.usda.gov/detail/r3/news-events/?cid=FSEPRD1124828. For classification purposes, the USFS called the Cerro Pelado Fire a wildfire, and the Pino West Prescribed Pile Burn a prescribed burn. (Doc. 49-1 ¶ 11.)

On January 27, 2023, TC submitted a FOIA request to the USFS seeking (1) "[t]he report on the Cerro Pelado Fire of the COR inspection on 4/26/22 which documented that merchantable

wood and equipment had been burned by the Cerro Pelado Fire;" (2) the reports on the Cerro Pelado fire by Ben Cooksey, Julian Madrid, and Travis Lunders—both the versions "before USFS made edits," and the versions after USFS made edits; and (3) all "cause and origin" reports on the Cerro Pelado Fire. (Docs. 50 UMF ¶ 1; 49 UMF ¶ 1; 49-1 ¶ 4.) On February 15, 2023, the USFS responded by invoking FOIA exemption 7(A) and withholding the requested records in full. (Docs. 50 UMF ¶ 2; 49 UMF ¶ 2; 49-1 ¶ 4.)

On February 28, 2023, TC sent a second FOIA request asking for "all Burn Plans and modifications to the plans" for the Cerro Pelado Fire that started on April 22, 2022, as well as "prescribed burn accomplishments (location and acreage), daily logs of all prescribed burn operations, weather observations for the area(s) of the prescribed burn operations, the prescribed fire personnel and the accompanying qualifications (Red Cards) on the Jemez Ranger District for 2022." (Docs. 50 UMF ¶ 3; 49 UMF ¶ 3; 49-1 ¶ 5.) In response, the USFS again invoked FOIA exemption 7(A) to withhold the requested records in full because, in part, the "Report of Investigation" of the Cerro Pelado Fire was not complete at the time of the request. (Docs. 50 UMF ¶ 4; 49 UMF ¶ 4; 49-2 ¶ 4.)

On April 18, 2023, TC appealed the USFS's FOIA responses for TC's first and second requests. (Docs. 50 UMF ¶ 5; 49 UMF ¶ 5; 49-1 ¶ 6; 49-2 ¶ 2.) On the same day, the USFS acknowledged receipt of the appeal. (Docs. 50 UMF ¶ 6; 49 UMF ¶ 6; 49-1 ¶ 6.) It is undisputed that the USFS did not render a final decision on TC's appeal. (Doc. 50 UMFs ¶¶ 7–8.)

On July 25, 2023, the USFS produced its first document, a redacted 230-page "Report of Investigation." (Docs. 50 UMF ¶ 15; 49 UMF ¶ 10; 49-2 ¶ 4; 49-3.) On August 30, 2023, the USFS produced 98 more pages of documents and four video files. (Docs. 50 UMF ¶ 21; 49 UMF ¶ 11; 49-3.) On September 29, 2023, the USFS produced another 305 pages of documents and one video

file. (Docs. 50 UMF ¶ 24; 49 UMF ¶ 12; 49-1 ¶ 7–8; 49-2 ¶ 4–5; 49-3.) On October 25, 2023, the USFS produced its fourth response to TC's FOIA requests, consisting of one video file with no audio.[3] (Docs. 50 UMF ¶ 27; 49 UMF ¶ 13; 49-1 ¶ 7; 49-2 ¶ 4; 49-3.) On January 18, 2024, the USFS again supplemented its response and provided one additional page of documents. (Docs. 50 UMF ¶ 43; 49 UMF ¶ 14; 49-1 ¶ 9; 49-3.)

## III. Analysis

### A. The USFS's Response to Plaintiff's Appeal

Under FOIA, an agency must "make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii). "The consequence for an agency's failure to make a timely determination is that 'administrative remedies are constructively exhausted and a cause of action accrues.'" *Hamilton*, 2015 WL 12696083, at *2 (citing *Peck v. C.I.A.*, 787 F. Supp. 63, 65 (S.D.N.Y. 1992)). As noted above, the USFS failed to make a determination on TC's appeal within the statutory 20-day period for doing so. Nor did the USFS avail itself of the statutory 10-day extension when "unusual circumstances" are present. *See* 5 U.S.C. § 552(a)(6)(B)(i). Accordingly, TC constructively exhausted its administrative remedies for its first and second FOIA requests. The USFS contends, however, that the filing of the lawsuit "negat[es] the need to complete the appeal." (Doc. 56 at 10.)

Here, while TC filed this action before the USFS's production of responsive documents, now that the USFS has produced documents it believes to be fully responsive to TC's requests, TC's timeliness claim is moot. *Beagles*, 2019 WL 1085170, at *9 ("The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant.").

---

[3] One day later, the USFS supplemented its response and produced a corrected video file in a format that also contained audio. (Docs. 50 UMF ¶ 28; 23 at 1.)

### B. TC's Third, Fourth, and Fifth FOIA Requests

"Generally, a plaintiff must exhaust [their] administrative remedies under FOIA before filing suit in federal court 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1179 (10th Cir. 2011) (citation omitted). "To exhaust administrative remedies, a plaintiff must request specific information in accordance with published administrative procedures and appeal any improperly refused request to the head of the agency." *Beagles*, 2019 WL 1085170, at *4 (citing 552 U.S.C. § 552(a)(6)(A); *Judicial Watch v. F.B.I.*, 190 F. Supp. 2d 29, 32–33 (D.C. Cir. 2002)). A corollary to this rule is that when an action is brought by a requestor alleging that an agency failed to timely respond to their FOIA request, only the request, as it was submitted to the agency, may be addressed in that litigation. *See Spears v. DOJ*, 139 F. Supp. 3d 79, 86 (D.D.C. 2015) (holding that "[plaintiff] will not be permitted to expand the scope of the request underlying this action and then assert an unexhausted claim.") (citation omitted); *cf. Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017) (holding that requester may not "expand the scope of [their] FOIA request in the course of litigation.") (citations omitted); *Pollack v. DOJ*, No. 89-2569, 1993 WL 293692, at *4 (D. Md. July 26, 1993) (finding that the court lacks subject matter jurisdiction over requests not submitted until after litigation was filed).

Here, TC is attempting to piggyback its third, fourth, and fifth FOIA requests—all submitted ***after*** filing an appeal in this Court—into this litigation. TC filed this action on June 14, 2023. (Doc. 1.) TC then submitted a third FOIA request two months later on August 9, 2023, (Doc. 50-5), a fourth FOIA request on January 2, 2024, (Doc. 50-15), and a fifth FOIA request on March 7, 2024. (Doc. 50-20.) Importantly, while TC did appeal its third FOIA request, (Doc. 50-25), it never appealed its fourth or fifth FOIA requests. Thus, the Court lacks jurisdiction to consider TC's

third FOIA request because it appealed the USFS's response after the instant litigation had already commenced. As to TC's fourth and fifth FOIA requests, it failed to appeal these requests and thus never exhausted its administrative remedies. For these reasons, the Court will not consider TC's third, fourth, and fifth FOIA requests, nor its purported undisputed material facts related to those requests.

### C. The Declarations of the USFS are Sufficient and Show its Good Faith Effort to Comply with FOIA

As a preliminary matter, TC asserts that the USFS's declarations by Margaret Scofield and Melissa Darr are insufficient because they "do not show that the USFS made a good faith effort to comply with the FOIA requests." (Doc. 55 at 13.) The Court disagrees. A court "may accept as true factual assertions in the moving party's declarations unless the opposing party submits its own declarations or documentary evidence to the contrary." *Judicial Watch., Inc. v. Dep't of the Navy*, 971 F. Supp. 2d 1, 2 (D.D.C. 2013); *see also Safecard*, 926 F.2d at 1201 (holding that the employee in charge of coordinating the search was the most appropriate person to provide a comprehensive affidavit and noting the presumption of good faith attributed to agency affidavits and Vaughn Indexes).

Here, the USFS submitted declarations from Ms. Scofield, "Assistant Director, FOIA, within the [USDA's] Forest Service"; and from Ms. Darr, "a Government Information Specialist (FOIA) at the [USFS's] Office of Regulatory and Management Services." (*See* Docs. 49-1 ¶ 2; 49-2 ¶ 1.) These individuals are knowledgeable and have access to the information in agency files. (Docs. 49-1 ¶¶ 1–3; 49-2 ¶ 1.) The declarations detail the process followed by the USFS to search for the information TC requested, including:

1. Ms. Scofield's rereading of the initial FOIA request and TC's appeal letter for clarification;

2. Ms. Darr's request for additional searches in response to the FOIA appeal;

3. Special Agent Geoffrey Osborn's search of the investigated file folder where all investigation files are stored;

4. Deputy Fire Staff Chief for the Santa Fe National Forrest, Jemez Ranger District, Brandon Hess's search of file folders in his office and the employees' Incident Qualifications and Certification System folders; and

5. Ms. Darr's conversation with Terrence Gallegos, Santa Fe National Forest Fire Management Officer, confirming all records responsive to the request were produced.

(*See* Docs. 49-1 ¶¶ 6–11; 49-2 ¶¶ 3–7.) The Court finds these declarations offer sufficient detail about the scope of the search to establish the USFS's good faith effort to comply with the request. *Cf. Weisburg v. U.S. Department of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding an affidavit insufficient where the affiant gave no detail as to the scope of his search).

Critically, TC offers only one declaration, which does not contradict any of the factual assertions in the USFS's declarations. (*See* Doc. 32.) Accordingly, the USFS's declarations are proper, undisputed, and may be considered by the Court.

### D. TC's First (01831-F) and Second (02406-F) FOIA Requests

On February 1, 2023, the Southwest Regional FOIA Service Center received TC's first FOIA request, seeking the following:

  i.  The report on the Cerro Pelado Fire of the COR inspection on 4/26/22 which documented that merchantable wood and equipment had been burned by the Cerro Pelado Fire.
 ii.  The report on the Cerro Pelado Fire by Ben Cooksey:
      a. The unedited version before the USFS made edits, and
      b. The version after the USFS made edits to Cooksey's report.
iii.  The report on the Cerro Pelado Fire by Julian Madrid:
      a. The unedited version before the USFS made edits, and
      b. The version after the USFS made edits to Madrid's report.
 iv.  The report on the Cerro Pelado Fire by Travis Lunders:

       a.   The unedited version before the USFS made edits, and
       b.   The version after the USFS made edits to Lunders' report.
   v.   All "cause and origin" reports on the Cerro Pelado Fire.

(Docs. 50 UMF ¶ 1; 49 UMF ¶ 1; 49-1 ¶ 4.) The USFS assigned this request the FOIA case number of 2023-FS-R3-01831-F. (Doc. 49-1 ¶ 4.) The USFS routed the request to the Regional FOIA Coordinator, Alisha Daniels. (*Id.*) Ms. Daniels then contacted regional law enforcement to confirm that the report of investigation on the Cerro Pelado Fire was not complete. (*Id.*) On February 15, 2023, a response withholding all records under FOIA exemption 7(A) was sent to TC. (*Id.*)

On February 28, 2023, TC submitted a second FOIA request, seeking the following:

   i.   For the Cerro Pelado Fire that started on 4/22/2022, all Burn Plans and modifications to the plans.
   ii.   For the Cerro Pelado Fire that started on 4/22/2022, prescribed burn accomplishments (location and acreage), daily logs of all prescribed burn operations, weather observations for the area(s) of the prescribed burn operations, the prescribed fire personnel and the accompanying qualifications (Red Cards) on the Jemez Ranger District for 2022.

(Docs. 50 UMF ¶ 3; 49 UMF ¶ 3; 49-1 ¶ 5.) The USFS assigned this second request the FOIA case number of 2023-FS-R3-02406-F. (Doc. 49-1 ¶ 5.) The request was again routed to Ms. Daniels. (*Id.*) Ms. Daniels again contacted regional law enforcement to confirm that the report of investigation on the Cerro Pelado Fire was not complete. (*Id.*) On March 13, 2023, a response withholding all records under FOIA exemption 7(A) was sent to TC. (*Id.*) On April 18, 2023, TC appealed these responses, and the appeal was given FOIA case number 2023-FS-WO-00059-A and assigned to Ms. Darr. (Docs. 50 UMF ¶ 5; 49 UMF ¶ 5; 49-1 ¶ 6; 49-2 ¶¶ 1–2.)

After receipt of the appeal of both FOIA responses, Ms. Darr reviewed the original requests along with the appeal letter and determined that no clarification as to the requested information was needed. (Docs. 49-1 ¶ 6; 49-2 ¶ 3.) On April 28, 2023, Ms. Darr spoke with Ms. Daniels and confirmed that the Cerro Pelado Fire investigation was still ongoing. (Doc. 49-2 ¶ 3.) Ms. Darr

asked to be updated upon completion of the investigation so she could update any redactions and move forward with TC's appeal. (*Id.*) On June 27, 2023, Ms. Darr corresponded with Ms. Daniels about the status of the investigation, and Ms. Daniels confirmed that the Cerro Pelado Fire investigation was nearing completion. (*Id.* ¶ 4.) Ms. Darr also contacted the USFS Law Enforcement and asked that copies of the investigation folder be provided to both her and Ms. Daniels. (*Id.*)

One day later, on June 28, 2023, Special Agent Osborn confirmed that the Cerro Pelado Fire investigation was complete. (*Id.*) On July 12, 2023, Ms. Darr received the Cerro Pelado Fire investigation report for processing. (*Id.*) On July 25, 2023, the USFS produced a redacted 230-page "Report of Investigation." (Docs. 50 UMF ¶ 15; 49 UMF ¶ 10; 49-2 ¶ 4; 49-3.) On July 28, 2023, Ms. Darr requested any remaining records responsive to TC's FOIA requests that were being held by the USFS Law Enforcement. (Doc. 49-2 ¶ 4.) "[Special Agent] Osborn completed the search of [the USFS] Law Enforcement records on August 1, 2023." (*Id.*; *see also* Doc. 49-1 ¶ 7.) He searched the investigated file folder and provided the entire contents of this investigated file folder to Ms. Daniels and Ms. Darr. (Docs. 49-1 ¶ 7; 49-2 ¶ 4.) "It was determined that information needed to be withheld pursuant to [FOIA] Exemptions 6 and 7([C]) to protect the names of investigators and witnesses, cell phone numbers, and home addresses of property owners." (Doc. 49-1 ¶ 7.) After redaction, these records were given to TC on September 29, 2023, and October 25, 2023, in response to items 2–5 of its first FOIA request. (Docs. 50 UMFs ¶¶ 24, 27; 49 UMFs ¶¶ 12–13; 49-1 ¶ 7; 49-2 ¶ 4.) "No responsive records were located for item 1 of [the first FOIA request]." (Docs. 49-1 ¶ 7; 49-2 ¶ 4.)

Also on August 1, 2023, Ms. Darr emailed Jennifer Cramer, Strategic Planning and Engagement Staff Officer for the Santa Fe National Forest, regarding the search for documents

-11-

responsive to TC's FOIA requests and to inquire whether any further documentation was needed. (Doc. 49-2 ¶ 5.) Ms. Darr also requested additional searches in response to TC's appeal, which Ms. Cramer forwarded to the Santa Fe National Forest Staff. (Docs. 49-1 ¶ 7; 49-2 ¶¶ 4–6.) On August 30, 2023, Mr. Hess conducted a search of the personal fire folders in his office and the employees' Incident Qualifications and Certification System (IQCS) Master record red card folders for the requested records and any investigative documents not already provided in response to the request. (Docs. 49-1 ¶ 8; 49-2 ¶ 5.) "He located nine . . . pages of responsive records consisting of the fire qualification cards ('Red Cards')[,] which were provided to [TC] on September 29, 2023[,] with" certain information withheld (an employee identification number) under FOIA exemption 6. (*Id.*) These nine pages were responsive to item 2 of TC's second FOIA request. (*Id.*)

After TC questioned the adequacy of the USFS's search for responsive records, as well as a purportedly missing fire qualification card, Ms. Darr spoke with Terrance Gallegos, Santa Fe National Forest Fire Management Officer, on January 11, 2024, to discuss the documents provided to Plaintiff after the two prior searches. (Doc. 49-1 ¶ 9.) Mr. Gallegos identified one missing document existed and conducted an additional search of the employees' IQCS folders. (*Id.*) During this search, Mr. Gallegos found one additional responsive document located in Lucas McLarty's IQCS hardcopy folder and provided this document to TC on January 18, 2024. (*Id.*) "This [additional] document was not included in [Mr. Hess's] original search because [Mr.] McLarty's IQCS hardcopy folder had been sent with him on detail to another [USFS] location and [the folder was] unavailable during [the] original search." (*Id.*) This additional document was responsive to item 2 of TC's second FOIA request and "Mr. Gallegos confirmed that, based on his personal experience with the Pino West prescribed burn and the [Cerro] Pelado Fire, all records in existence

that were responsive to [TC's] requests had been provided." (Docs. 49-1 ¶ 9; 49-2 ¶ 6.) Mr. Gallegos also "confirmed that no daily logs or Form 214[s] existed for any prescribed burns during the Cerro Pelado Fire[,]" nor were daily logs or Form 214s "created for the Pino West prescribed burns[,] which occurred in January and February of 2022" and were "referenced in the Report of Investigation as a potential cause of the Cerro Pelado [Fire]." (Doc. 49-1 ¶ 11.)

In summary, for TC's first FOIA request, 2023-FS-R3-01831-F, the USFS maintains no responsive records were found for item 1, and responsive records were provided to TC for items 2–5. For TC's second FOIA request, 2023-FS-R3-02406-F, the USFS contends no responsive records were found, exclusive of the Red Cards, for items 1 and 2.

TC makes two arguments in support of its insistence that the USFS is improperly withholding documents responsive to its request. First, TC argues that the requested records were not compiled for law enforcement purposes and thus, the USFS improperly cited FOIA exemption 7(A) to withhold responsive records. (Doc. 50 at 17–22.) Second, TC questions the USFS's good faith in conducting its document search and accuses the USFS of engaging in "semantic games" when searching for responsive records. (*Id.* at 23–25.) The Court finds both arguments unavailing.

As to TC's first argument (improper claimed exemption), the evidence shows that the USFS withheld the requested report under FOIA exemption 7(A) because at the time of the request, the USFS was still investigating the Cerro Pelado Fire. Once the investigation was complete, and during the pendency of this litigation, the USFS dropped its FOIA exemption 7(A) claims and provided the Report of Investigation to TC with certain redactions for names, addresses, and contact information of witnesses and law enforcement (FOIA exemption 7(C)); and redactions for personally identifiable information relating to employees or other personnel mentioned in

responsive documents (FOIA exemption 6).[4] The USFS instructed the USFS Law Enforcement and Santa Fe National Forest Staff to search for the records requested by TC. The declarations of Ms. Scofield and Ms. Darr fully describe the searches conducted and their results, as well as the follow-up searches conducted after TC questioned the adequacy of the initial searches. These declarations are "sufficiently detailed and non-conclusory and demonstrate that the search method was reasonably conducted to uncover all relevant documents." *Hamilton*, 2015 WL 12696083, at *3; *see also Safecard Servs., Inc.*, 926 F.2d at 1201 (holding that the employee in charge of coordinating the search was the most appropriate person to provide a comprehensive affidavit and noting the presumption of good faith attributed to agency affidavits and Vaughn Indexes). Because it is well-settled that an agency's FOIA search need not be perfect or exhaustive, *Hamilton*, 2015 WL 12696083, at *3, the Court finds that the USFS's declarations fully describe the USFS's search efforts. Thus, the Court concludes that the undisputed material facts establish that the USFS met its reasonable search obligations under FOIA.

As to TC's second argument (semantic games), it cites no facts to question the good faith of the USFS's search or assertions. (Doc. 50 at 23–25.) For example, TC finds fault with the USFS conducting its search based, in part, on the "text of the request." (Doc. 50 at 24.) But TC's second FOIA request sought records relating to all burn plans and modifications to burn plans, prescribed burn accomplishments (location and acreage), daily logs of all prescribed burn operations, and weather observations for the area(s) of the prescribed burn operations ***for the Cerro Pelado Fire***. (Docs. 50 UMF ¶ 3; 49 UMF ¶ 3; 49-1 ¶ 5.) Consequently, it was entirely appropriate for the USFS to respond that no such records existed ***because*** the USFS considers the Cerro Pelado Fire a wildfire, where no prescribed burning occurred. (Doc. 49-1 ¶ 10.) And while daily logs do exist

---

[4] TC makes no argument that the information withheld under FOIA exemptions 6 or 7(C) was improper.

for the wildfire known as the Cerro Pelado Fire, the specific language that TC used in its FOIA request never requested those documents. (*Id.* ¶ 11.) Accordingly, the Court finds that it was not unreasonable for the USFS to match the scope of their search to the specific words of the request.

## IV.  Conclusion

The USFS completed an adequate search for the records requested by TC, and TC has failed to raise a sufficient dispute to justify denial of the USFS's summary judgment motion.

**IT IS THEREFORE ORDERED** that the USFS's motion for summary judgement is **GRANTED**, (Doc. 49), and TC's motion for summary judgment is **DENIED**. (Doc 50.) TC's claims regarding Exhibits 1-3 attached to its June 14, 2023 FOIA appeal, (Docs. 1-1 to -4), are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE